NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. EW-12-1659-PaJuTa |
| | ) |
| SPOKANE RACEWAY PARK INC., | ) Bankr. No. 06-01966 |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| ORVILLE MOE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| JOHN D. MUNDING, Chapter 11 | ) |
| Trustee, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on July 25, 2013
at Butte, Montana

Filed - August 2, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington

Honorable Patricia C. Williams, Bankruptcy Judge, Presiding

Appearances:    Orville Moe, pro se appellant, and John D. Munding, Chapter 11 Trustee, pro se appellee, argued.

Before: PAPPAS, JURY, and TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Creditor Orville Moe ("Moe") appeals the order of the bankruptcy court entering a final decree and closing the chapter 11[2] case of debtor Spokane Raceway Park, Inc. ("Debtor"). We AFFIRM.

## FACTS

Debtor was formed in 1971 in the State of Washington to manage and oversee the development of a motor racing stadium complex in Airway Heights, Washington. Moe is president of Debtor and, with his brothers, owns 90 percent of the shares of debtor; 10 percent is owned by Robert Kovacevich. Debtor is the general partner of Washington Motorsports Limited ("WML"), a partnership created to own, develop and operate the stadium. Kovacevich v. Munding (In re Spokane Raceway Park, Inc.), 2007 Bankr. LEXIS 4856 *2 (9th Cir. BAP December 13, 2007) aff'd, 329 Fed. Appx. 86 (9th Cir. 2009).[3]

In 1994, Debtor entered into an agreement with the Kalispel Indian Tribe (the "Tribe") creating the KNAEZ Joint Venture to develop a business enterprise zone on twenty acres adjacent to the motor racing stadium. There were a number of other agreements and leases among the Debtor, WML and the Tribe. As a result of various disputes, Debtor, WML and the Tribe have been involved in

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. Civil Rule references are to the Federal Rules of Civil Procedure 1-86.

[3] As discussed below, we cite these unpublished decisions under the doctrine of law of the case. For clarity and brevity, we will cite the BAP decision as Spokane Raceway I, and the Ninth Circuit's decision affirming the BAP as Spokane Raceway II.

several legal actions in state and federal courts since 2003.

On August 17, 2006, Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. On motion of the state-appointed Receiver of WML and the U.S. Trustee, John D. Munding ("Trustee") was appointed to serve as chapter 11 trustee on September 28, 2006.

Trustee eventually negotiated a settlement agreement (the "Settlement Agreement") among Debtor, WML (through its Receiver) and the Tribe. Under its terms, the Tribe released Debtor and WML, and WML and Debtor released the Tribe, from the claims asserted in the litigation in the federal and state courts. In exchange for the mutual releases, the Tribe agreed to pay $2.45 million to Debtor and WML in consideration for Debtor and WML's conveyance of their interests in 2.9 acres located near the stadium. Upon that conveyance, the Tribe agreed to convey whatever interests it may claim in ten acres of WML's property.

Moe and Kovacevich strenuously objected to approval of the Settlement Agreement in the bankruptcy court because, they alleged, the Tribe owed Debtor over $17 million as a result of an arbitrator's decision on June 8, 2005. Additionally, they argued that the Tribe's $2.4 million payment for the 2.9 acres was less than the arbitrator's valuation of the land at $3.1 million.

The bankruptcy court conducted an evidentiary hearing concerning approval of the Settlement Agreement on May 10, 2007. After considering the evidence presented, at a continued hearing on May 15, 2007, the court announced its oral findings of fact and conclusions of law and its decision to approve the Settlement Agreement. Applying the factors in Martin v. Kane (In re A&C

-3-

Props.), 784 F.2d 1377, 1381 (9th Cir. 1986), the court concluded that the compromise represented by the Settlement Agreement was fair and equitable as to Debtor.

Kovacevich appealed the bankruptcy court's decision to the BAP, essentially offering the same arguments Moe and he had made in the bankruptcy court. Moe did not appeal. The BAP rejected Kovacevich's appeal on alternative grounds. First, the Panel decided that appeal was moot because the order approving the Settlement Agreement had not been stayed and the financial terms of the Settlement Agreement had been concluded. In this respect, the Panel noted that, at oral argument, Kovacevich was unable to "offer any meaningful suggestion as to how effective appellate relief could be afforded." Spokane Raceway I at *8.

The Panel also ruled that, even if the issues were not moot, "we nevertheless hold that the bankruptcy court did not abuse its discretion in granting the trustee's motion for approval of the Settlement Agreement." Id. at *12. The Panel examined the record and reviewed the bankruptcy court's application of the A&C Props. factors. The Panel concluded that "the [bankruptcy] court made sufficient factual findings to support its conclusion that the Settlement Agreement was fair and equitable and should be approved." Id. at *13. The Panel therefore decided that the bankruptcy court "did not abuse its discretion in approving the settlement because the court examined all four factors adequately in making a full and independent assessment that the compromise was fair and equitable." Id. at *19.

Kovacevich appealed the BAP's decision in Spokane Raceway I to the Ninth Circuit, which affirmed in an unpublished memorandum

-4-

on May 19, 2009.  Spokane Raceway II, 329 Fed. Appx. 86.

Trustee proposed a liquidating plan in the bankruptcy case on November 7, 2009.  Based on the funds received in the Settlement Agreement, the plan proposed a distribution by Trustee that would pay 100 percent of the creditors' claims.  Moe contested confirmation of that plan, relying on substantially the same grounds that he had opposed the Settlement Agreement.  After a hearing, the bankruptcy court confirmed the plan in an order entered March 16, 2010.  Moe appealed the bankruptcy court's decision to confirm the plan to the District Court for the Eastern District of Washington.  The district court dismissed the appeal on September 10, 2010, because Moe failed "to address the underlying procedural or substantive reasons for the appeal." E.D. Wash. Case CV-10-106, dkt. no. 24.

On October 30, 2010, Trustee filed his Final Account and Motion for Order Entering Final Decree.  In it, Trustee certified to the bankruptcy court that the chapter 11 case had been fully administered.  Moe objected to Trustee's motion and entry of the order for essentially the same reasons he had objected to approval of the Settlement Agreement and to confirmation of the plan, insisting that the case should remain open so the bankruptcy court could reconsider the Settlement Agreement and his allegations of improper actions by Trustee.

The bankruptcy court held a hearing on the Trustee's motion on December 12, 2012.  At the close of the hearing, the bankruptcy court announced its oral findings of fact and conclusions of law, explaining in part that:

What we have here is a plan which was confirmed in March

-5-

of 2010. It was a liquidation plan. It's been substantially consummated. The administrative claims have been paid in full, other than the ones [for] which there are applications currently pending. There's funds to pay those. General unsecured claims have been paid in full. . . . We've got the final accounting. . . . Review of the docket reveals that the case has been fully administered. So under [§] 350 of the Code this case should be closed.

Hr'g Tr. 13:13-14:4, December 12, 2012.

The bankruptcy court entered a final decree and order closing the case on December 17, 2012. Moe filed a timely notice of appeal on December 27, 2012.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy abused its discretion in entering a final decree and closing the chapter 11 case.

**STANDARD OF REVIEW**

A bankruptcy court's decision to enter a final decree and close a chapter 11 case is reviewed for abuse of discretion. Shotkoski v. Fokkena (In re Shotkoski), 420 B.R. 479, 483 (8th Cir. BAP 2009); In re Union Home and Industrial, Inc., 375 B.R. 912, 917-18 (10th Cir. BAP 2007). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion: (1) we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested and (2), if it did, we examine the bankruptcy court's factual findings under the clearly erroneous standard. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). We must affirm the bankruptcy court's factual findings unless those

-6-

findings are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" Id.

**DISCUSSION**

Section 350(a) governs the closing of bankruptcy cases; it provides: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." This Code provision is implemented in chapter 11 cases via Rule 3022, which provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."). The Advisory Committee Note in connection with Rule 3022 observes, in relevant part:

> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the [bankruptcy] court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

Advisory Committee Note to Rule 3022 (1991). The Sixth Circuit BAP, in Shotkoski, noted:

> The Advisory Committee Note is the only guidance available to the courts for determining whether an estate has been fully administered. A definition for 'fully administered' does not appear anywhere in the Code or the Rules.

In re Shotkoski, 420 B.R. at 482; see also In re Omega Optical, Inc., 476 B.R. 157, 167 (Bankr. E.D. Pa. 2012) (same); Graves v.

-7-

Rebel Rents, Inc. (In re Rebel Rents, Inc.), 326 B.R. 791, 804 (Bankr. C.D. Cal. 2005) (same). Although the Advisory Committee Note provides guidance on when a bankruptcy court may enter a final decree, not all the factors set forth in the Advisory Committee Note need to be present to establish that a case is fully administered for final decree purposes. In re Rebel Rents, Inc., 326 B.R. at 804 (citing In re Mold Makers, Inc., 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1990)).

In this case, it appears that five of the factors are relevant; factor four relating to assumption of the debtor's business is not applicable in a case involving a liquidating plan. Stated simply, here Trustee adequately demonstrated that confirmation of the plan was final, and the terms of that plan had been substantially consummated; all deposits and transfers of property envisioned in the plan had been made; and payments to creditors had not only been commenced, but apparently were complete, except for some administrative expenses for which funds were available and committed. There were apparently no other remaining motions or matters pending before the bankruptcy court in the chapter 11 case. The bankruptcy court made findings of fact to support these factors, and we perceive no error in these findings.

Of course, Moe does not challenge the bankruptcy court's findings. Rather, in addition to his allegations of improper actions by Trustee (for which Moe provides no evidence), he continues to assert the same arguments made repeatedly years ago in the bankruptcy court in opposition to approval of the Settlement Agreement and plan confirmation. Vaguely, in his

-8-

appellate brief, he suggests that some financial benefit might result "if this settlement is voided." Moe Op. Br. at 3. He requests "the Court to keep the Chapter 11 open to Void the settlements and or disgorge [Trustee's] fees in the proceeding." Id.

We decline to consider Moe's arguments again in this appeal. As the Panel determined in Spokane Raceway I, any suggestion that the Settlement Agreement should be overturned is moot because, to do so, would involve "circumstances too complex to be unraveled." If that was true in 2007, it is obviously no less so in 2013.

Even if that were not so, in Spokane Raceway I the Panel examined the merits of Moe's arguments, and ruled that the bankruptcy court "did not abuse its discretion in approving the settlement because the court examined all four [A&C Props.] factors adequately in making a full and independent assessment that the compromise was fair and equitable." Spokane Raceway I at *19. Under the doctrine of law of the case, a court is precluded from reconsidering an issue already decided in the same case. Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001). The Ninth Circuit instructs us that we should only depart from law of the case doctrine under limited circumstances:

> The law of the case doctrine provides that a panel of this court has discretion to depart from the law of the case established by the same panel, or another, where: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning

-9-

_Agency_, 216 F.3d 764, 787 (9th Cir. 2000), aff'd, 122 S.Ct. 1465 (2002). None of these three exceptions to the doctrine applies in this appeal. On the other hand, it would likely "work a manifest injustice" if we were to attempt to unwind the rights and duties established in a six-year-old settlement agreement and in a confirmed plan under which millions of dollars have changed hands and been distributed among Debtors' creditors.

In short, Moe's arguments have all been previously advanced and rejected, and no reason exists to revisit his complaints. The bankruptcy court did not abuse its discretion in entering the final decree and closing the chapter 11 case.

## CONCLUSION

We AFFIRM the order of the bankruptcy court.